*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2016 UT 10**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

JESUS MONARREZ,
*Petitioner,*

*v.*

UTAH DEPARTMENT OF TRANSPORTATION,
*Respondent.*

No. 20140911
Filed March 9, 2016

On Certiorari to the Court of Appeals

Third District, Salt Lake
The Honorable Judge Vernice S. Trease
No. 120907616

Attorneys:

F. Kim Walpole, Matthew G. Koyle, Ogden, for petitioner

Sean D. Reyes, Att'y Gen., Stanford E. Purser, Reed M. Stringham,
Asst. Att'ys Gen., Salt Lake City, for respondent

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which
ASSOCIATE CHIEF JUSTICE LEE, JUSTICE DURHAM, and JUSTICE HIMONAS
joined.

JUSTICE JOHN A. PEARCE became a member of the Court on
December 17, 2015, after oral argument in this matter, and
accordingly did not participate.

CHIEF JUSTICE DURRANT, opinion of the Court:

### Introduction

¶ 1 We granted certiorari in this case to decide whether the
court of appeals correctly determined that the Utah Governmental
Immunity Act (GIA) barred Jesus Monarrez's claims. Mr. Monarrez,
after being injured when forced to stop suddenly near a construction
crew on a Utah road, attempted to bring a negligence claim against

the Utah Department of Transportation (UDOT) and several unnamed "John Does." The parties agree that Mr. Monarrez properly filed a notice of claim pursuant to the GIA but disagree as to the effect of a letter sent by UDOT after Mr. Monarrez's claim had been deemed denied. We granted certiorari to interpret the relevant portion of the GIA, Utah Code section 63G-7-403, and clarify the effect, or lack thereof, that a denial letter sent after the date a claim is deemed denied has on a claimant's time to file a lawsuit. We also granted certiorari to determine whether the State should be estopped from asserting its statute of limitations defense due to the statements contained within the letter and whether Mr. Monarrez's claims against the "John Doe" defendants were properly dismissed. We affirm.

**Background**

¶ 2 This case arises out of Jesus Monarrez's attempt to sue UDOT for negligence. The facts of the accident giving rise to Mr. Monarrez's claim against UDOT are not particularly relevant to the legal issues we are called upon to decide today. In brief, Jesus Monarrez was riding his motorcycle in Garfield County in August 2010 when he rounded a corner and came upon a construction zone and crew. He was forced to stop suddenly, tipping over his motorcycle and sustaining injuries. He claims that UDOT breached its duty to keep the roadway safe and adequately warn about the construction and should accordingly be held liable for his injuries. In compliance with the GIA, Mr. Monarrez timely submitted a notice of claim against UDOT on August 23, 2011. In the cover letter sent with the notice of claim, Mr. Monarrez requested a response "within the 90 days as required by that statute or otherwise."[1] The GIA provides, however, that "the governmental entity or its insurance carrier shall inform the claimant in writing that the claim has either been approved or denied" "[w]ithin *60 days* of the filing of a notice of claim."[2]

¶ 3 UDOT did not respond to the notice of claim within sixty days. Accordingly, Mr. Monarrez's claim was "considered to be

---

[1] The GIA previously provided the governmental entity a ninety-day timeline in which to accept or deny a claim. *See* UTAH CODE § 63-30D-403 (2003). It was amended in 2004, years prior to Mr. Monarrez's accident, to allow only sixty days for a governmental response. *See* S.B. 55, 2004 Leg., Gen. Sess. (Utah 2004).

[2] UTAH CODE § 63G-7-403(1)(a) (emphasis added).

denied" no later than October 24, 2011.[3] On November 15, 2011—after the date Mr. Monarrez's claim was deemed to be denied pursuant to the statute—UDOT, through the Utah Division of Risk Management,[4] sent a letter to Mr. Monarrez stating that UDOT had "completed an investigation of [Mr. Monarrez's] claim and [had] concluded that [UDOT was] not liable for [Mr. Monarrez's] damages. . . . Therefore, we respectfully deny your claim." The letter also contained a clause stating that the letter does "not constitute a waiver of any of the provisions or requirements of the Governmental Immunity Act[,] . . . nor does it confirm or verify the sufficiency of the claimant's notice of claim as required by the Act."

¶ 4 The GIA provides that "[t]he claimant shall begin the action within one year after denial of the claim or within one year after the denial period . . . has expired."[5] Mr. Monarrez filed suit on November 9, 2012—over one year from the deemed denied date, but less than one year from the date of the letter. The complaint also named as defendants several "John Does" (Doe Defendants)—described as "construction companies and/or their employees"—who Mr. Monarrez alleged were also negligent. UDOT answered the complaint and moved for summary judgment, arguing that the GIA barred Mr. Monarrez's claim because he did not file within a year of the date on which it was deemed denied. Mr. Monarrez countered that the letter had restarted the year-to-file period provided for in the GIA and, even if it had not, UDOT should be estopped from asserting the time limitation provisions of the GIA because of the letter. He also argued that the Doe Defendants should not be dismissed until their identities and relationship to UDOT were known. The trial court granted UDOT's motion for summary judgment, dismissing Mr. Monarrez's entire suit with prejudice, including his claim against the Doe Defendants.

¶ 5 Mr. Monarrez appealed and the court of appeals affirmed, holding that the GIA required Mr. Monarrez to file within a year

---

[3] *Id.* § 63G-7-403(1)(b). The parties treated October 24, 2011, as the cut-off date below, though it appears the actual date was October 23. Regardless of which of those two days applies, the outcome is the same in this case.

[4] For ease of reference, we refer to UDOT as the author and sender of the letter.

[5] *Id.* § 63G-7-403(2)(b).

after his claim had been deemed denied and that the letter sent by UDOT was "functionally superfluous."[6] The court distinguished two cases dealing with other statutes containing similar limitations that had permitted a government response sent after a deemed denial to restart the time to file.[7] Although Mr. Monarrez asked the court to apply this decision prospectively, the court of appeals did not do so after finding that its interpretation of the GIA "has minimal impact and does not result in substantial injustice."[8] Judge Voros dissented from this particular holding, arguing the decision should be applied purely prospectively because "the 'prior state of the law' in this general area consisted of two supreme court cases interpreting similar provisions . . . and reaching a contrary result."[9] The court of appeals also held that UDOT was not estopped from asserting the limitations defense because its letter had not contained "an affirmative representation that the Limitations Provision may be interpreted as [Mr.] Monarrez contends."[10] Finally, the court also affirmed the dismissal of the Doe Defendants, holding that Mr. Monarrez had either alleged that the Defendants were employees of UDOT—and thus protected under the GIA—or had failed to state a claim against them at all.[11] Mr. Monarrez petitioned for certiorari on each of these issues, which we granted.

## Standard of Review

¶ 6 We granted certiorari to address four issues: (1) whether the court of appeals was correct that the proper interpretation of the limitations provision in the GIA barred Mr. Monarrez's claim; (2) whether the court of appeals' majority was correct that a decision interpreting the GIA in favor of UDOT should be applied retrospectively; (3) whether the court of appeals was correct in determining that UDOT was not estopped from asserting the limitations defense; and (4) whether the court of appeals was correct in affirming the dismissal of the Doe Defendants.

---

[6] *Monarrez v. Utah Dep't of Transp.*, 2014 UT App 219, ¶ 15, 335 P.3d 913.

[7] *Id.* ¶¶ 17–28. These cases are discussed *infra* ¶¶ 20–26.

[8] *Monarrez*, 2014 UT App 219, ¶ 33.

[9] *Id.* ¶ 50 (Voros, J., dissenting) (citations omitted).

[10] *Id.* ¶ 38 (majority opinion).

[11] *Id.* ¶¶ 41–45.

¶ 7 Statutory interpretation and the grant of summary judgment are legal questions reviewed for correctness.[12] And we "giv[e] the court of appeals' conclusions of law no deference."[13] To the extent an issue involves a factual question, we "view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party," Mr. Monarrez.[14] We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(a).

## Analysis

¶ 8 We granted certiorari to address four issues: first, whether the language of Utah Code section 63G-7-403 permits a denial letter sent after a claim is deemed denied to restart the GIA's limitations period; second, if we decide that a late letter does not restart the limitations period, whether we should apply our holding purely prospectively; third, whether UDOT should be estopped from asserting the statute of limitations defense based on its representations in the letter; and fourth, whether the court of appeals was correct in dismissing Mr. Monarrez's claims against the Doe Defendants. We address each issue in turn and, for the reasons discussed below, affirm the decision of the court of appeals in its entirety.

I. UDOT's Letter Was a Legal Superfluity Because the Plain Language of the GIA Is Clear that a Claim Can Be Denied Only Once

¶ 9 The first issue in this case is the meaning of Utah Code section 63G-7-403, which reads as follows:

> (1)(a) Within 60 days of the filing of a notice of claim, the governmental entity or its insurance carrier shall inform the claimant in writing that the claim has either been approved or denied.
>
> (b) A claim is considered to be denied if, at the end of the 60-day period, the governmental entity or its insurance carrier has failed to approve or deny the claim.

---

[12] *See R.A. McKell Excavating, Inc. v. Wells Fargo Bank, N.A.*, 2004 UT 48, ¶ 7, 100 P.3d 1159.

[13] *Energy Claims Ltd. v. Catalyst Inv. Grp. Ltd.*, 2014 UT 13, ¶ 17, 325 P.3d 70 (citation omitted).

[14] *Young v. Salt Lake City Sch. Dist.*, 2002 UT 64, ¶ 2, 52 P.3d 1230 (citation omitted).

(2)(a) If the claim is denied, a claimant may institute an action in the district court against the governmental entity or an employee of the entity.

(b) The claimant shall begin the action within one year after denial of the claim or within one year after the denial period specified in this chapter has expired, regardless of whether or not the function giving rise to the claim is characterized as governmental.

Mr. Monarrez argues that this statutory language provides for two alternative timelines for filing: either one year after the sixty-day denial period expired or, regardless of whether a claim has previously been deemed denied, one year after the government accepts or denies the claim in writing. He bolsters his statutory language analysis by pointing to two cases dealing with similar statutory schemes in which we held that a written response sent after a deemed denial restarted the time to file. The court of appeals rejected this interpretation, holding that the letter sent by UDOT was "functionally superfluous" because the two alternative timelines provided for in the statute were mutually exclusive and our prior cases were distinguishable.[15] We first address the statutory language, concluding that the statute's language permits a denial of a claim to occur only once and that the letter sent by UDOT after the deemed denial was superfluous. We then review our caselaw and hold that it is consistent with this interpretation of the GIA. We accordingly affirm the court of appeals' decision on this point.

*A. The Statutory Language Permits a Claim to Be Denied Only Once*

¶ 10 The first question of statutory interpretation that we must address is whether subsection (2)(b) of section 63G-7-403 creates two alternative timeframes for filing a lawsuit that depend on the methods of denial described in subsection (1). We conclude that the court of appeals correctly held that it does. We then address how those two timeframes may be triggered and hold that the statutory mechanisms for triggering the timeframes, found in subsections (1)(a) and (1)(b) of section 63G-7-403, are mutually exclusive. We accordingly hold that the letter sent by UDOT purporting to deny Mr. Monarrez's claim was not a valid denial and did not trigger the year-to-file period because it was sent after the claim had already been deemed denied.

---

[15] *Monarrez v. Utah Dep't of Transp.*, 2014 UT App 219, ¶¶ 13, 15, 23–26, 335 P.3d 913.

¶ 11 "When interpreting a statute, it is axiomatic that this court's primary goal 'is to give effect to the legislature's intent in light of the purpose that the statute was meant to achieve.'"[16] And as we have often noted, "[t]he best evidence of the legislature's intent is 'the plain language of the statute itself.'"[17] "But we do not interpret the 'plain meaning' of a statutory term in isolation. Our task, instead, is to determine the meaning of the text given the relevant context of the statute (including, particularly, the structure and language of the statutory scheme)."[18] Thus, "we read the plain language of the statute as a whole, and interpret its provisions in harmony with other statutes in the same chapter and related chapters."[19] Finally, we avoid "[a]ny interpretation which renders parts or words in a statute inoperative or superfluous" in order to "give effect to every word of a statute."[20]

¶ 12 First, we note that the parties and the court of appeals have correctly interpreted subsection (2)(b) of 63G-7-403 to provide two alternative timeframes for filing, which are dependent on the mechanism of the denial. Subsection (2)(b) provides that if a claim is denied, a claimant may file a lawsuit against the government "within one year after denial of the claim or within one year after the denial period specified in this chapter has expired."[21] Thus, the statute establishes two alternative timeframes for filing a lawsuit, with one timeframe triggered by a "denial of the claim" and the other triggered by the expiration of "the denial period specified in this chapter."[22] The meaning of these two triggers—a "denial" or the expiration of the "denial period"—is made evident by subsection (1), which provides two ways a claim can be denied—a written denial or a deemed denial at the end of the sixty-day response period.[23] It is

---

[16] *Biddle v. Wash. Terrace City*, 1999 UT 110, ¶ 14, 993 P.2d 875 (citation omitted).

[17] *State v. Miller*, 2008 UT 61, ¶ 18, 193 P.3d 92 (citation omitted).

[18] *Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 12, 248 P.3d 465.

[19] *Dahl v. Dahl*, 2015 UT 79, ¶ 159, __ P.3d __ (citation omitted).

[20] *Turner v. Staker & Parson Cos.*, 2012 UT 30, ¶ 12, 284 P.3d 600. (citation omitted) (second alteration in original).

[21] UTAH CODE § 63G-7-403(2)(b).

[22] *Id.*

[23] *Id.* § 63G-7-403(1).

only logical that the first-listed trigger of the year-to-file period—a "denial"—would be linked to the first-listed denial method—a written denial—and the second-listed trigger—the expiration of the "denial period"—is linked to the second-listed denial method—a deemed denial after the expiration of the sixty-day period.

¶ 13 Accordingly, the parties and the court of appeals are correct in their interpretation of subsection (2)(b) to provide for alternative timeframes to file a lawsuit, based on the mechanism of a denial. Because subsection (2)(b)'s alternative timelines for the filing of a lawsuit depend on the methods of denial described in subsection (1), the true issue with regard to the interpretation of section 63G-7-403 in this case is whether UDOT's tardy denial letter qualifies as a valid written denial under subsection (1)(a). If it does, then UDOT's letter constituted a "denial" under subsection (2)(b) and triggered the corresponding year-to-file timeframe—regardless of whether the deemed denial after sixty days had previously triggered the deadline.

¶ 14 The two mechanisms for triggering a claimant's year-to-file period are found in subsection (1) of section 63G-7-403. Subsection (1)(a) reads as follows: "Within 60 days of the filing of a notice of claim, the governmental entity . . . shall inform the claimant in writing that the claim has either been approved or denied."[24] Subsection (1)(b) provides that "[a] claim is considered to be denied if, at the end of the 60-day period, the governmental entity . . . has failed to approve or deny the claim."[25] Under Mr. Monarrez's interpretation of subsection (1), the government can issue a valid denial letter after the sixty-day period has run and a claim has been deemed denied. Thus, Mr. Monarrez argues, UDOT's letter constituted a denial under subsection (1)(a), thereby restarting the year-to-file period and rendering his complaint timely. Because we conclude that the two denial methods described in subsection (1) are mutually exclusive, we disagree.

¶ 15 Mr. Monarrez's interpretation would render superfluous the "[w]ithin 60 days" language of subsection (1)(a), essentially rewriting the statute to permit a claim to be litigated whenever the government chose to send a denial letter, even if the original

---

[24] *Id.* § 63G-7-403(1)(a).

[25] *Id.* § 63G-7-403(1)(b).

limitations period had run.[26] Such an interpretation would circumvent the unmistakable legislative direction that a lawsuit must be brought within one year of a denial and that a denial can occur only within sixty days after the notice of claim. This direction is found in the legislature's choice to make the denial methods in subsection (1) mutually exclusive.

¶ 16 Subsection (1)(b) states that a claim is deemed to be denied only "if, at the end of the 60-day period, the governmental entity . . . *has failed to approve or deny the claim*."[27] Because a deemed denial occurs only if the government fails to issue a written denial, there cannot be a written denial followed by a deemed denial. Likewise, because subsection (1)(a) states that the government "shall inform" a claimant of written denial "[w]ithin 60 days of the filing of a notice of claim," it is impossible for a deemed denial—which happens only *after* sixty days—to occur before a valid written denial is issued. Thus, the better reading of the statute is that a denial—whether by operation of law or by written notice—can occur only *once* within this sixty-day timeframe. Once a claim has been denied by one mechanism, it cannot be denied again by the other. To hold otherwise would be to ignore the sixty-day language found in subsection (1), which would require us to disregard both unmistakable legislative intent[28] and our own canons of

---

[26] Counsel for Mr. Monarrez agreed at oral argument that Mr. Monarrez's interpretation of the statute would permit the state to issue a denial letter over a year after a claim had been deemed denied—and thus after the limitations period had already run—and restart the year-to-file period.

[27] *Id.* § 63G-7-403(1)(b) (emphasis added).

[28] Mr. Monarrez argues that the statute cannot be read in this way because if the legislature intended such a result, it could have spoken more clearly, such as by adding "'the earlier of' to its time limitation." As discussed, our interpretation is mandated by the plain language of the statute. Further, although there may be cases in which the legislature's failure to include certain language within a statute may be important, it is usually the case that "[t]he legislature's failure to speak more clearly tells us little of relevance to our interpretation of the words that it adopted." *In re Estate of Hannifin*, 2013 UT 46, ¶ 26, 311 P.3d 1016. *But see Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶¶ 14, 21, 267 P.3d 863 (stating that we "seek to give effect to omissions in statutory language by

(Continued)

construction.[29] Accordingly, we cannot accept Mr. Monarrez's interpretation.

¶ 17 Mr. Monarrez argues that the interpretation we adopt today would place a "jurisdictional bar" on the government's authority that would somehow restrict the government's ability to settle a lawsuit based on a denied claim. Our caselaw has accepted the principle that a statutory time limit can operate as a jurisdictional limit on a government entity's authority to approve or deny claims.[30] Despite this recognition, we have never held or otherwise suggested that such statutory restrictions somehow limit the ability of the government to settle a claim. Mr. Monarrez has not provided any legal authority supporting his position, and we fail to see how a statutory limit on the time that the government has to respond to a claim inhibits in any way its ability to negotiate and settle a subsequent lawsuit based on that claim.

¶ 18 Thus, a denial occurs either by written notice within sixty days—subsection (1)(a)—or by operation of law, a deemed denial, if the government does not respond within those sixty days—subsection (1)(b). Because a claim cannot be denied in both ways, the time to file a lawsuit can be triggered only once. Accordingly, Mr. Monarrez's claim was denied by operation of law at the end of the sixty-day response period, October 24, 2011. Nothing UDOT did after that point could affect either that denial or the start of the limitations period—UDOT could not undo the deemed denial or restart the limitations period. Therefore, Mr. Monarrez was required to file his lawsuit by October 24, 2012. Because he filed his complaint on November 9, 2012, his suit was barred by the limitations period in subsection (2)(b).

---

presuming all omissions to be purposeful" and recognizing that the omission of certain language in the statute rendered it ambiguous).

[29] *See Turner*, 2012 UT 30, ¶ 12 ("We . . . avoid[] '[a]ny interpretation which renders parts or words in a statute inoperative or superfluous.'" (citation omitted) (third alteration in original)).

[30] *See Young v. Salt Lake Cty.*, 2002 UT 70, ¶ 11 n.2, 52 P.3d 1240 ("The County implicitly argues that section 63-2-401(5)(a)(i) bars the Sheriff from responding to GRAMA requests after five days and cites *Retherford* . . . in support of the proposition that the Sheriff may not change *statutory jurisdictional requirements*. Although this is a correct reading of *Retherford*, the Sheriff's response . . . after five days did not violate any statutory requirements." (emphasis added)).

¶ 19 Normally, "[w]here a statute's language is unambiguous and provides a workable result, we need not resort to other interpretive tools, and our analysis ends."[31] In this case, however, Mr. Monarrez points to caselaw interpreting similar statutory provisions in other acts that reach a different result. Despite our conclusion that the plain language of the statute requires us to affirm the decision of the court of appeals, the similarities between the statutory schemes at issue warrant a discussion of these cases. As we discuss below, our prior cases are fully consistent with our interpretation of the GIA.

*B. The Caselaw Addressing Similar Statutory Provisions Is Consistent with the Interpretation of the GIA We Adopt Today*

¶ 20 Mr. Monarrez argues that the interpretation of the GIA that we adopt today is in conflict with two cases that interpreted similar language in two other statutory schemes within the same title of the Utah Code. The two cases are *Harper Investments, Inc. v. Auditing Division, Utah State Tax Commission*,[32] interpreting the Administrative Procedures Act (APA),[33] and *Young v. Salt Lake County*,[34] interpreting the Government Records Access and Management Act (GRAMA).[35] As Mr. Monarrez correctly points out, in both of these prior cases we permitted a response sent after a deemed denial to restart the time to file a lawsuit. After reviewing the cases and statutes in question, however, we conclude that they are consistent with the interpretation of the GIA we adopt today because, unlike the GIA, the two other statutory schemes expressly permit the parties to extend the applicable timeframes.

¶ 21 The first case, *Harper Investments*, interpreted the APA. Under the APA, a party "may file a written request for

---

[31] *Torrie v. Weber Cty.*, 2013 UT 48, ¶ 11, 309 P.3d 216 (citation omitted).

[32] 868 P.2d 813 (Utah 1994).

[33] Utah Code § 63G-4-101 *et seq*. The current version of the APA contains the same pertinent language as the 1989 version interpreted in *Harper*.

[34] 2002 UT 70, 52 P.3d 1240.

[35] Utah Code § 63G-2-101 *et seq*. The current version of GRAMA contains the same pertinent language as the 1997 version interpreted in *Young*.

reconsideration" of an agency's order with the agency issuing the order.[36] In response to the request for reconsideration, "[t]he agency head . . . shall issue a written order granting the request or denying the request."[37] Then, "[i]f the agency head . . . does not issue an order within 20 days after the filing of the request, the request for reconsideration shall be considered to be denied."[38] Judicial review is available if the person files "within 30 days after the date that the order constituting the final agency action is issued or is considered to have been issued under Subsection 63G-4-302(3)(b)."[39] Just as with the GIA, the APA provides for two timelines to file for judicial review, triggered by the method of denial. Unlike the GIA, however, the APA permits "a presiding officer, for good cause shown, [to] lengthen[] or shorten[] a time period prescribed in this chapter."[40] In *Harper*, under a factual scenario similar to that presented here, we held that "if an agency chooses to issue an order denying a petition for reconsideration after the twenty-day presumptive denial period, the actual date of issuance would mark the beginning of the thirty-day time period," effectively restarting a petitioner's time to file.[41]

¶ 22 The second case cited by Mr. Monarrez is *Young v. Salt Lake County*, interpreting GRAMA. GRAMA provides a process for requesting government records and appealing the denial of such requests. If a request for access to records is denied, a party may "fil[e] a notice of appeal with the chief administrative officer."[42] "The chief administrative officer shall make a decision on the appeal" within either five or twelve days, depending on the type of request.[43] The failure of the officer to respond "is the equivalent of a decision affirming the access denial."[44] After a denial, whether by written notice or after the expiration of the denial period, the party has the

---

[36] *Id.* § 63G-4-302(1)(a).

[37] *Id.* § 63G-4-302(3)(a).

[38] *Id.* § 63G-4-302(3)(b).

[39] *Id.* § 63G-4-401(3)(a).

[40] *Id.* § 63G-4-102(9).

[41] *Harper Invs.*, 868 P.2d at 816 (citing *49th St. Galleria v. Tax Comm'n, Auditing Div.*, 860 P.2d 996, 999 (Utah Ct. App. 1993)).

[42] UTAH CODE § 63G-2-401(1)(a).

[43] *Id.* § 63G-2-401(5)(a).

[44] *Id.* § 63G-2-401(5)(b).

option of petitioning for judicial review.[45] The party must do so within "30 days after the government entity has responded to the records request by . . . denying the request" or within "35 days after the original request if the governmental entity failed to respond to the request."[46] Just like the APA and the GIA, the timeline to file for judicial review depends on the method by which the claim was denied. Unlike the GIA—but similarly to the APA, as discussed above—GRAMA provides that "the parties participating in the proceeding may, by agreement, extend the time periods specified in this section."[47]

¶ 23 In *Young*, as in *Harper Investments* and the case before us today, Mr. Young's petition for judicial review of a GRAMA request was untimely under the deemed denial date but timely if the government's late response restarted the clock. We held that, even though the petition had been deemed denied prior to the response, Mr. Young's petition was timely because the government entity "chose to respond to [Mr.] Young's request."[48] The government's response had triggered the alternative timeline to file, despite the expiration of the limitations timeframe established by the deemed denial date, giving Mr. Young "thirty days from the date of the response to file a petition."[49]

¶ 24 Both of these statutory schemes, the APA and GRAMA, contain provisions expressly granting authority to extend the applicable deadlines—a provision absent from the GIA. We addressed this difference in *Young*, where the government had "implicitly" argued that GRAMA's requirement that the government respond within a certain timeframe meant that the government's late response lacked legal effect.[50] We noted that GRAMA—like the

---

[45] *Id.* § 63G-2-404.

[46] *Id.* § 63G-2-404(2)(b)(i)–(ii) (2009). The quoted statutory language, now since amended, was the language interpreted by us in *Young*. *See* 2002 UT 70, ¶ 6.

[47] UTAH CODE § 63G-2-401(5)(c).

[48] *Young*, 2002 UT 70, ¶¶ 10–11.

[49] *Id.* ¶ 11.

[50] *Id.* ¶ 11 & n.2. As we note below, the requirement that the government respond within a certain deadline is present in both the GIA and GRAMA, but not the APA, which provides another basis

(Continued)

APA—contains a provision that "authorizes the parties to extend the specified time periods by agreement."[51] We held that the government's "choice to respond to [Mr.] Young's request outside of the [statutory timeframe] and [Mr.] Young's choice to rely upon that response as the basis of his petition for judicial review *shows an implicit agreement to extend the period.*"[52] Accordingly, the government's "response . . . did not violate any statutory requirements" and constituted a denial that triggered the time to file.[53] Although our decision in *Harper Investments* apparently did not rely on the statutory authority to extend timelines, this difference between the statutory schemes renders the APA and cases interpreting it distinguishable from the present case.[54]

---

for distinguishing *Harper Investments* from the present case. *See infra* note 54.

[51] *Id.* ¶ 11 n.2.

[52] *Id.* (emphasis added).

[53] *Id.* As discussed above, the APA has a similar provision for extending timelines. *See supra* note 40 and accompanying text.

[54] *See Harper Invs.*, 868 P.2d at 815–16. In *Harper Investments*, we agreed with and adopted an interpretation of the APA rendered by the court of appeals in an earlier case. *See id.* (citing and discussing *49th St. Galleria*, 860 P.2d at 998–99). The court of appeals had determined that the "disjunctive term 'or'" found in the APA's mandate that a party "file a petition for judicial review . . . within 30 days after the date that the order constituting the final agency action is issued *or* is considered to have been issued" meant that a party may petition for judicial review within thirty days of either a written denial or a deemed denial, regardless of which one comes first. *49th St. Galleria*, 860 P.2d at 998–99. Although neither we nor the court of appeals discussed in detail why this interpretation was permissible under the APA, it is clear that such an interpretation was possible because the APA does not require the government to respond within a certain timeframe—unlike the GIA. *See* UTAH CODE § 63G-4-302(3)(a) ("The agency head . . . shall issue a written order granting the request or denying the request."). Because there is no statutory requirement that a government response come, if at all, within the denial period, the denial methods are not mutually exclusive under the APA as they are under the GIA and GRAMA. *See Young*, 2002 UT 70, ¶ 11 n.2. This is yet another ground on which to distinguish *Harper Investments* from the present case.

¶ 25 The statutory authority to extend deadlines found in both the APA and GRAMA is not present in the GIA. As the GIA has no such provision, the letter sent by UDOT after the deemed denied date could not act as part of "an implicit agreement to extend the period" for UDOT to respond.[55] The GIA's "statutory jurisdictional requirements"[56] mandate that the government to respond, if at all, within sixty days. Because the GIA is clear that the denial methods are mutually exclusive, if the government fails to act within those sixty days, the claim is deemed denied, and the government has no authority to extend the applicable deadlines. Accordingly, Mr. Monarrez's claim could not be "re-denied" or his year-to-file period restarted by UDOT's letter. *Young* and *Harper Investments* are fully consistent with this interpretation. Accordingly, we affirm the decision of the court of appeals as to this issue.

¶ 26 We hold today that the Governmental Immunity Act permits a denial to happen in only one of two mutually exclusive ways: either the government responds in writing within sixty days, or the claim is denied by operation of law at the end of those sixty days. A response sent after a claim has been deemed denied has no legal effect. This result is mandated by the plain language of the statute and is consistent with our prior caselaw. Because our interpretation of the GIA would require that we affirm the dismissal of Mr. Monarrez's negligence claim, we now address whether our decision on this issue should have only prospective effect, as Mr. Monarrez argues. For the reasons discussed below, our decision today will, as is generally the case, have retroactive effect.

## II. Our Interpretation of the GIA Does Not Alter the Prior State of the Law or Impose an Undue Burden and Will Be Applied Retroactively

¶ 27 Mr. Monarrez argues that a decision affirming the court of appeals' interpretation of the GIA should be applied only prospectively, as urged by Judge Voros in his dissent below.[57] He presents two reasons in support of his argument: first, Mr. Monarrez is due special consideration because of his status as a California citizen and resident; second, the language of the GIA, when

---

[55] *Young*, 2002 UT 70, ¶ 11 n.2

[56] *Id.*

[57] *Monarrez v. Utah Dep't of Transp.*, 2014 UT App 219, ¶¶ 47–52, 335 P.3d 913 (Voros, J., dissenting).

combined with our precedent related to the APA and GRAMA, would suggest that Mr. Monarrez's interpretation was correct.[58] We review Mr. Monarrez's arguments in turn and conclude that the circumstances in this case do not warrant rendering our decision purely prospective.

¶ 28 The general rule of retroactivity is that "the ruling of a court is deemed to state the true nature of the law both retrospectively and prospectively."[59] This is a rule of "judicial policy rather than judicial power," as "[c]onstitutional law neither requires nor prohibits retroactive operation of [a] . . . decision."[60] Generally, prospective-only application of a decision is a result of a change in the law.[61] Indeed, we could not find, and neither party cited, a single case applying a decision purely prospectively that did not also expressly

---

[58] Mr. Monarrez also cites to Oklahoma law for the proposition that a decision deciding a "novel point of procedure," such as our interpretation of the GIA today, requires that we apply our decision purely prospectively. *See Hathaway v. State ex rel. Med. Research & Tech. Auth.*, 49 P.3d 740, 744 (Okla. 2002). Regardless of whether Mr. Monarrez's interpretation of Oklahoma law is correct, or whether our interpretation of the GIA today could even be considered a "novel point of procedure," Mr. Monarrez has not provided us with a reason to look beyond our own retroactivity jurisprudence, and we see no reason to do so. Accordingly, we decline to address this argument.

[59] *Malan v. Lewis*, 693 P.2d 661, 676 (Utah 1984).

[60] *Loyal Order of Moose, #259 v. Cty. Bd. of Equalization*, 657 P.2d 257, 264 (Utah 1982).

[61] *See Kennecott Corp. v. State Tax Comm'n of Utah*, 862 P.2d 1348, 1352 (Utah 1993) ("This court has developed a sound theoretical framework for determining when a *new rule of law* in a civil case will be applied retroactively." (emphasis added)); *Van Dyke v. Chappell*, 818 P.2d 1023, 1025 (Utah 1991) ("When we conclude that there has been justifiable reliance *on the prior state of the law* . . . the court may order that a decision apply only prospectively. . . . [T]his court has applied changed common law prospectively in cases where retrospective application would upset the expectations of those who have relied *on the former law*." (emphases added)); *Loyal Order of Moose*, 657 P.2d at 265 (stating that a court "may prohibit retroactive operation of the *overruling* decision" "[w]here *overruled* law has been justifiably relied upon" (emphases added)).

recognize the decision would significantly alter the legal landscape by ending or overruling a relied-upon practice,[62] statute,[63] or case. [64]

---

[62] *See ExxonMobil Corp. v. Utah State Tax Comm'n*, 2003 UT 53, ¶ 23, 86 P.3d 706 (holding that a decision clarifying an ambiguous statute, which invalidated a practice of the Utah Tax Commission, would be prospective-only in order to "protect the solvency of governmental entities and to avoid administrative and financial hardship caused by retroactive application of rules contrary to those relied on"); *Bd. of Educ. of the Granite Sch. Dist. v. Salt Lake Cty.*, 659 P.2d 1030, 1037 (Utah 1983) (holding that a statute prohibited certain long-standing practices of the Salt Lake County Treasurer and making the decision prospective-only because "[i]t may be extremely disruptive to county government" and because "it is the county taxpayers who will suffer the brunt of the Treasurer's omission").

[63] *See, e.g.*, *Rio Algom Corp. v. San Juan County*, 681 P.2d 184, 196 (Utah 1984) (citing numerous cases applying their decisions prospectively where they held "that state taxes or assessment procedures were unconstitutional" because the local government units and tax authorities were justified in relying on a duly enacted statute, "which is presumptively constitutional," and doing the same in that case); *Merrill v. Utah Labor Comm'n*, 2009 UT 74, ¶ 11, 223 P.3d 1099 ("[W]e recognize that a justified reliance on the constitutionality of the statute existed and that full retroactive application of our ruling would create significant burdens.").

[64] *See, e.g.*, *Loyal Order of Moose*, 657 P.2d at 263–65 (overruling a prior line of cases interpreting a particular constitutional tax provision broadly but applying the holding prospectively only, stating that "[t]he holding [of these cases] has been the law upon which many organizations have operated and upon which tax exemptions have been granted or denied"); *Timpanogos Planning & Water Mgmt. Agency v. Cent. Utah Water Conservancy Dist.*, 690 P.2d 562, 572 (Utah 1984) (overruling a prior case to the extent it addressed a particular constitutional issue but making the decision prospective because the Central Utah Water Conservancy District "and perhaps other water districts have in good faith relied upon our [prior] decision"); *cf. Van Dyke*, 818 P.2d at 1025–26 (stating that prospective application was not warranted because the overruled law could not have induced reliance because the law existed for a shorter period of time than required to assert a claim based on that law).

But importantly, "[t]he bare assertion . . . that our decision overrules prior cases . . . is insufficient to prohibit its retroactive application."[65] Instead, there must be a showing of "justifiable reliance on the prior state of the law" or that "the retroactive operation of the new law may otherwise create an undue burden."[66] Without justifiable reliance or some other undue burden, we adhere to the general rule of retroactivity in order to not "turn[] the court's opinion into an advisory opinion or dicta."[67]

¶ 29 Mr. Monarrez first argues that a prospective-only decision is warranted because he "is a citizen of California who was merely utilizing Utah's system of interstate highways when he was injured." To the extent Mr. Monarrez is arguing that the retroactive effect of this decision creates an undue burden because his status as a non-Utah citizen means he was unfamiliar with Utah law, Utah courts have long recognized that a party "is not excused from complying with the law simply because the law was unknown to him."[68] Accordingly, we see no merit in this argument.

¶ 30 Mr. Monarrez's second argument is that there is a reliance interest that warrants making our decision prospective-only. As he argues, "the plain language of the statute suggested that if the State issued a denial letter that a suit could properly be brought for one year after the letter." Judge Voros agreed with this argument in his dissent below, relying also on his view that "the 'prior state of the law' in this general area consisted of two supreme court cases interpreting similar provisions of the APA and GRAMA and reaching a contrary result."[69] Because our decision today does not

---

[65] *Malan*, 693 P.2d at 676.

[66] *Van Dyke*, 818 P.2d at 1025.

[67] *Rio Algom Corp.*, 681 P.2d at 196 (stating that prospective application can deprive litigants "of the fruits of their victory").

[68] *Brent Brown Dealerships v. Tax Comm'n, Motor Vehicle Enf't Div.*, 2006 UT App 261, ¶ 29, 139 P.3d 296.

[69] *Monarrez*, 2014 UT App 219, ¶ 50 (Voros, J., dissenting) ("Until today, no Utah court had examined the Limitations Provision in the context of a twice-denied notice of claim. I consider the legal question a close call. . . . Though we distinguish [the APA and GRAMA] cases based on statutory differences, reasonable minds might see those statutes and this one as more similar than different and so apply that case law.").

change "the prior state of the law," and Mr. Monarrez has failed to provide any evidence of reliance, we apply our decision retroactively.[70]

¶ 31 First, our decision today is not a departure from a prior understanding of the statute—it simply confirms the plain meaning of the statute. We have never interpreted this section of the GIA in any other way and, as discussed, the APA and GRAMA cases are both distinguishable and consistent with the interpretation of the statute described above. Our decision that the language of the statute is unambiguous leaves little room for us to apply our decision purely prospectively.[71]

¶ 32 Further, even if we were to conclude that our decision today deviates from a reasonable interpretation of the prior state of the law, Mr. Monarrez has provided no evidence that he relied on his misinterpretation of the statute or the APA and GRAMA cases in waiting to file his lawsuit. Neither in his brief nor in his opposition to summary judgment below did Mr. Monarrez argue that he postponed filing in reliance on the APA and GRAMA cases. Although counsel for Mr. Monarrez suggested at oral argument that we could infer reliance based solely on the fact that Mr. Monarrez filed his lawsuit within a year from the date of the letter, this inference is not enough to warrant making our decision purely prospective.[72] And even if it was, it is hard to see how any reliance

---

[70] *See Van Dyke*, 818 P.2d at 1025 ("When we conclude that there has been justifiable reliance *on the prior state of the law* . . . the court may order that a decision apply only prospectively . . . . (emphasis added)).

[71] We also note that an unpublished case from the court of appeals is closely on point, similarly holding that a party could not rely on a letter sent by the government after the deemed denial date to delay filing a lawsuit. *See Morales v. State*, 2007 UT App 250, para. 5 (unpublished decision) (per curiam). This further suggests that our decision today is not a departure from a prior interpretation of the GIA.

[72] *See Malan*, 693 P.2d at 676 (refusing to apply the court's decision prospectively, even though we struck down as unconstitutional a statute that had previously been upheld in prior cases, because "[t]he defendants in this case [did] not argue that they justifiably relied on our prior decisions sustaining the constitutionality of the [overruled statute]" and "[t]here [was] no

(Continued)

on Mr. Monarrez's part would have been reasonable given the unambiguous language of the statute and the numerous cases interpreting the limitation provisions of the GIA as requiring strict compliance and due diligence.[73] Reliance on cases interpreting other statutory provisions would be unreasonable in light of the cases dealing specifically with the GIA.

¶ 33 Mr. Monarrez has provided no evidence of the kind of reliance or undue burden that would justify giving our decision in this case prospective-only effect. The only apparent ill effect a retroactive decision would have is that Mr. Monarrez loses his case against UDOT. This cannot constitute an "undue burden" because "[i]f such an approach were followed, any decision that modified in any way a previously articulated legal standard would have to be prospective only, making prospective application the rule rather than the exception."[74] Ultimately, "[t]here is no showing that any considerable number of persons or corporations would be affected by letting the decision apply retrospectively. There is no showing that injustice would result or that administration of justice would in any way be affected."[75] Accordingly, we affirm the decision of the court of appeals as to this issue and apply our decision retroactively, as is usually the case.

¶ 34 Having addressed both of Mr. Monarrez's arguments related to our interpretation of the GIA, we turn now to his

---

evidence that the defendants knew of the [overruled statute] and relied upon it").

[73] *See Davis v. Cent. Utah Counseling Ctr.*, 2006 UT 52, ¶ 48, 147 P.3d 390 ("Plaintiffs must exercise the diligence necessary to effect strict compliance with the [GIA]. . . . Reliance on inferences and assumptions does not constitute due diligence."); *Hall v. Utah State Dep't of Corr.*, 2001 UT 34, ¶ 23, 24 P.3d 958 ("We have consistently and uniformly held that suit may not be brought against the state or its subdivisions unless the requirements of the [GIA] are strictly followed."); *Wheeler v. McPherson*, 2002 UT 16, ¶ 12, 40 P.3d 632 ("Applying this rule of strict compliance, we have repeatedly denied recourse to parties that have even slightly diverged from the exactness required by the [GIA].").

[74] *Van Dyke*, 818 P.2d at 1026.

[75] *State Farm Mut. Ins. Co. v. Farmers Ins. Exch.*, 493 P.2d 1002, 1003 (Utah 1972).

alternative argument that UDOT should be estopped from asserting the GIA's limitations provision as a defense.

### III. UDOT Is Not Estopped from Asserting the Limitations Defense

¶ 35 Mr. Monarrez alternatively argues that if we do not permit UDOT's letter to restart the limitations period, we should treat it as an act inconsistent with UDOT's later assertion of the limitations defense and estop UDOT from raising the defense. There are three elements to estoppel: "(1) an admission, statement, or act inconsistent with the claim afterwards asserted, (2) action by the other party on the faith of such admission, statement, or act, and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act."[76] "[T]he usual rules of estoppel do not apply against" the government,[77] however, and "courts must be cautious in applying equitable estoppel against the State."[78] Accordingly, estoppel is applied against the state only "if necessary to prevent manifest injustice, and the exercise of governmental powers will not be impaired as a result."[79] Because we conclude that Mr. Monarrez's argument fails on the first element—whether UDOT made a representation that was inconsistent with a later claim—we affirm the decision of the court of appeals.

¶ 36 As we have noted, "[t]he few cases in which Utah courts have permitted estoppel against the government have involved *very specific* written representations."[80] For example, in *Celebrity Club, Inc. v. Utah Liquor Control Commission*, we estopped the Liquor Control Commission from denying a liquor license on the ground that the applicant had failed to comply with a specific siting requirement.[81] The applicant had previously sought guidance from the Commission on how to comply with the siting requirement, and the Commission,

---

[76] *Celebrity Club, Inc. v. Utah Liquor Control Comm'n*, 602 P.2d 689, 694 (Utah 1979) (citation omitted).

[77] *Breitling Bros. Constr., Inc. v. Utah Golden Spikers, Inc.*, 597 P.2d 869, 871 (Utah 1979).

[78] *Celebrity Club*, 602 P.2d at 694.

[79] *Id.* (citation omitted).

[80] *Anderson v. Pub. Serv. Comm'n of Utah*, 839 P.2d 822, 827 (Utah 1992) (emphasis added).

[81] 602 P.2d at 694–95.

after reviewing surveys of the proposed site, had sent a letter to the applicant stating that the applicant had satisfied the requirement.[82] Similarly, in *Eldredge v. Utah State Retirement Board*, the court of appeals estopped the Utah State Retirement Board from denying over six years of service credit to a former employee.[83] The employee, prior to retiring, had sought guidance from the Utah State Retirement Office as to whether certain service credits would be counted toward his retirement benefits.[84] The office researched the issue and sent the employee a letter stating that the service credits would be posted to his account and that he would not need to purchase them.[85] In both cases, estoppel was warranted because there were "very clear, well-substantiated representations by government entities" that were directly contradicted by those entities' subsequent actions.[86]

¶ 37 In the context of the GIA, although no published case has directly addressed what kind of statement may estop the government entity from asserting that a claim was untimely,[87] we have insisted on strict compliance with the terms of the GIA even in the face of potentially intentional misrepresentations about how to

---

[82] *Id.* at 690–91, 694–95.

[83] 795 P.2d 671, 676 (Utah Ct. App. 1990).

[84] *Id.* at 672–73.

[85] *Id.*

[86] *See Anderson*, 839 P.2d at 827–28 (citing and discussing *Celebrity Club* and *Eldredge*).

[87] The court of appeals, in the unpublished case referenced earlier, rejected a party's claim "that the State should have been equitably estopped from asserting the statute of limitations defense based upon the [GIA] because the State had misled [the party] into believing that it had accepted [the party's] claim" by way of a letter after the denial period had expired. *Morales v. State*, 2007 UT App 250, para. 4 (unpublished decision) (per curiam). The court held that an express waiver in the letter—identical to the one found in the denial letter in this case—"unambiguously informed [the party] that . . . the State was not waiving any defenses available to it." *Id.* para. 5. Further, the court held that the party "could not rely on the letter . . . because the notice of claim was denied [prior to the letter] by operation of law." *Id.*

comply with the notice provisions of the act.[88] Thus, in order to estop UDOT from asserting the GIA's one year limitations period as a defense, there must be a specific, written representation directly related to that issue, such as a statement that Mr. Monarrez had satisfied the GIA's requirements or that the government would not assert the defense in litigation.

¶ 38 Mr. Monarrez argues that "the letter's statement 'we respectfully deny your claim' is incompatible with the position that UDOT could not deny the claim because it was already denied by operation of law." This statement—"we respectfully deny your claim"—is neither a "very specific" nor a "very clear," representation that UDOT would not later assert the statute of limitations defense, nor is it even necessarily incompatible with the later assertion that Mr. Monarrez's claim had already been denied by operation of law. There is no evidence that Mr. Monarrez asked UDOT if it would forbear asserting the limitations defense, and the letter itself refuted such a conclusion by stating that it did "not constitute a waiver of any of the provisions or requirements of the Governmental Immunity Act . . . nor does it confirm or verify the sufficiency of the claimant's notice of claim as required by the Act." The statement, "we respectfully deny your claim," does not clearly convey the sentiment that an earlier denial had not occurred or that the letter restarted Mr. Monarrez's year-to-file period. Although Mr. Monarrez argues that we can infer that the import of the letter would be inconsistent with UDOT's assertion of the limitations defense, estoppel, especially against the government, requires much more than an inference. Accordingly, Mr. Monarrez's estoppel claim fails, and we affirm the decision of the court of appeals.

---

[88] *See Greene v. Utah Transit Auth.*, 2001 UT 109, ¶¶ 5–6, 17, 37 P.3d 1156 (affirming the dismissal of a claim because the claimant failed to deliver the notice of claim to the appropriate party at UTA, even though she misdirected her notice in reliance on statements made by a representative of UTA); *Davis v. Cent. Utah Counseling Ctr.*, 2006 UT 52, ¶¶ 3–5, 46–49, 147 P.3d 390 (affirming the dismissal of a claim for failure to comply with the notice requirements of the GIA because the claimant's attorney sent the notice of claim to the State Attorney General's Office in reliance on a statement by an assistant attorney general instead of to the appropriate party).

¶ 39 Having addressed all of the issues related to Mr. Monarrez's claim against UDOT, we turn now to a brief discussion of his arguments related to the dismissal of the "John Doe" defendants.

## IV. The Doe Defendants Were Properly Dismissed

¶ 40 As a final matter, Mr. Monarrez argues that the court of appeals erroneously affirmed the trial court's dismissal of the entire case, including the unnamed and unserved Doe Defendants, because "UDOT made no argument at any time before the trial court that the claims against the Doe [D]efendants had to be dismissed." Mr. Monarrez is correct that UDOT never sought for dismissal of the Doe Defendants and the trial court never addressed Mr. Monarrez's claim against them. The court of appeals nevertheless affirmed the dismissal of the entire case, holding that summary judgment on the pleadings was appropriate because Mr. Monarrez either alleged the Doe Defendants were employees of UDOT or failed to state a cause of action against them. We affirm the court of appeals' decision on this issue. [89]

¶ 41 We note that there are multiple procedural issues that Mr. Monarrez would face in attempting to continue litigation against the unnamed Doe Defendants. First, Mr. Monarrez has not yet served the Doe Defendants as required by rule 4 of the Utah Rules of Civil Procedure. As we held in *Hunter v. Sunrise Title Co.*, "[w]here all *served* co-defendants are formally dismissed, . . . rule 4(b) requires service upon at least one of the remaining *unserved* defendants within 120 days of filing of the complaint, absent the district court's grant of an extension for good cause."[90] Without such service,

---

[89] *See First Equity Fed., Inc. v. Phillips Dev., LC*, 2002 UT 56, ¶ 11, 52 P.3d 1137 ("[I]t is well established that an appellate court may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action, and this is true even though such ground or theory is not urged or argued on appeal by appellee, was not raised in the lower court, and was not considered or passed on by the lower court." (citation omitted)).

[90] 2004 UT 1, ¶ 11, 84 P.3 1163; *see also id.* ¶ 12 (holding that "if all served co-defendants are dismissed, a plaintiff . . . must either (1) serve at least one unserved defendant within 120 days of the date the original complaint was filed; or (2) petition the district court for an

(Continued)

dismissal is required.[91] Further, rule 9 requires Mr. Monarrez to amend his complaint once he knows the identity of the Doe Defendants,[92] which raises the issue of whether the amended complaint would "relate back" to the original date of filing.[93]

¶ 42 Regardless of these procedural issues, it is clear from the allegations in the complaint that the dismissal of Mr. Monarrez's claims against the Doe Defendants was appropriate. The complaint describes the Doe Defendants as "construction companies and/or their employees." The complaint's only reference to any construction companies or workers are allegations that "the construction workers were employed by the Utah Department of Transportation" and "the flag worker was employed by UDOT." Mr. Monarrez also alleged that "[e]ven if the flag worker and construction workers were not employed by UDOT, their activities were controlled and directed by UDOT" through UDOT's establishment of "a traffic control plan which controlled how the construction would be performed" and the presence of "an on-site inspector who was to review the traffic control methods and devices employed by the construction workers and assure that they complied with the traffic control plan."

---

extension *prior to the dismissal of the served co-defendants*, if the 120-day period has already expired." (emphasis added)).

[91] *See* UTAH R. CIV. P. 4(b)(i).

[92] Rule 9(a)(2) of the Utah Rules of Civil Procedure states that "[w]hen a party does not know the name of an adverse party, . . . such adverse party may be designated in any pleading or proceeding by any name." But once "the true name of such adverse party is ascertained, the pleading or proceeding must be amended accordingly."

[93] Because Mr. Monarrez agrees that the statute of limitations has now run on any claim against the Doe Defendants, any amendment must relate back to the original date or be time-barred. *See* UTAH R. CIV. P. 15(c) ("Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading, the amendment relates back to the date of the original pleading."); *Penrose v. Ross*, 2003 UT App 157, ¶ 9, 71 P.3d 631 ("Generally, however, rule 15(c) will not apply to an amendment which substitutes or adds new parties for those brought before the court by the original pleadings . . . ." (citation omitted)).

¶ 43 Mr. Monarrez argues that his "errant legal conclusion in [his] complaint"—the allegations that the construction workers were employees of or controlled by UDOT—does not warrant the dismissal of his claims against the Doe Defendants. Disregarding Mr. Monarrez's legal conclusions, the only inference we can draw from the factual allegations is that the construction workers were employed or controlled by UDOT. Thus, if the construction workers referenced in these allegations are the Doe Defendants, the pleadings, which we accept as true, unambiguously establish that they were employed or controlled by UDOT.[94] As the GIA prohibits suits against employees of governmental entities,[95] the dismissal of Mr. Monarrez's claims against the Doe Defendants was warranted.[96]

¶ 44 Alternatively, if the construction workers described in the complaint as employees of UDOT are not the Doe Defendants—who are described only as "construction companies and/or their employees"—then Mr. Monarrez has failed to allege the basis for his claim against them. Although Mr. Monarrez alleges that "John Does I–V had a duty to keep the roadway safe" and "breached their duty to keep the roadway safe," he provides no allegations of any actions taken by the Doe Defendants separate and distinct from the acts of the construction workers—who he alleged were employees of UDOT—that caused him harm. Thus, dismissal was proper because the allegations in the complaint fail to state a claim against the Doe Defendants. We accordingly affirm the decision of the court of appeals.

---

[94] Because summary judgment was granted on the pleadings, similar to a motion for judgment on the pleadings, we "accept[] the factual allegations in the complaint as true." *Moss v. Parr Waddoups Brown Gee & Loveless*, 2010 UT App 170, ¶ 6, 237 P.3d 899.

[95] With limited exceptions, the GIA provides that "each governmental entity and each employee of a governmental entity are immune from suit." UTAH CODE § 63G-7-201(1).

[96] Mr. Monarrez asserts that UDOT "bore the burden of (1) identifying the Doe defendants and (2) proving that they were protected by the [GIA]." He cites no law for his assertion that UDOT bore the burden of identifying the Doe defendants, and we see no reason to shift the responsibility of bringing the proper parties to the court from a plaintiff to a co-defendant.

**Conclusion**

¶ 45 The plain language of the GIA's limitations provision permits a claim to be denied only once—either by a written denial or by operation of law. The denial letter sent after the deemed denial had already occurred did not restart the limitations period and was a legal superfluity. Accordingly, the GIA required Mr. Monarrez to file within a year of the deemed denial, which he failed to do. Because our interpretation of the GIA follows the plain meaning of the statute and is consistent with our prior cases, and Mr. Monarrez did not provide evidence of reliance, our decision interpreting the GIA will be given its usual retroactive effect. Further, because UDOT's letter contained no specific representation inconsistent with its later assertion of the limitations defense, estoppel is not warranted. Finally, the court of appeals was correct in affirming the dismissal of the Doe Defendants as the only allegations in the complaint potentially related to the Defendants described them as employees of UDOT. We accordingly affirm the decision of the court of appeals.

————————