2025 UT App 122

# THE UTAH COURT OF APPEALS

R.O.A. GENERAL INC.,
Appellee,

*v.*

SALT LAKE CITY CORPORATION,
Appellant.

Opinion
No. 20230838-CA
Filed August 14, 2025

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 190902263

Samantha J. Slark, Attorney for Appellant

Troy L. Booher, LaShel Shaw, Leslie Van Frank, and
Bradley M. Strassberg, Attorneys for Appellee

JUDGE JOHN D. LUTHY authored this Opinion, in which
JUDGES RYAN M. HARRIS and AMY J. OLIVER concurred.

LUTHY, Judge:

¶1      This dispute—over a billboard in Salt Lake City—has a lengthy history. Beginning in 2014, the owner of the billboard, Outfront Media, LLC, formerly CBS Outdoor, LLC (CBS), was twice denied permission by Salt Lake City Corporation (the City) to relocate the billboard.[1] After the City's second denial was

---

1. CBS later "transferred all of its rights, title and interest in" the billboard to R.O.A. General Inc. and moved for R.O.A. General to be substituted in as the plaintiff in this case in place of CBS. The motion was granted. As we did in a previous appeal in this matter, we will, "[f]or simplicity, . . . refer to these entities as CBS throughout this opinion." *R.O.A. Gen. Inc. v. Salt Lake City Corp.*, 2022 UT App 141, ¶ 2 n.2, 525 P.3d 100.

affirmed on appeal in *Outfront Media, LLC v. Salt Lake City Corp.*, 2017 UT 74, 416 P.3d 389, CBS brought this inverse condemnation action in the district court, alleging that it was statutorily entitled to just compensation for the value of the billboard because of the City's denial of its second relocation request. CBS also requested a declaratory judgment that the City was estopped from denying such compensation.

¶2     The City moved for summary judgment, asserting that the billboard did not qualify for compensation under the relevant statutes. CBS opposed the City's motion but did not file one of its own. The district court denied the City's motion and, at the same time, granted summary judgment in favor of CBS, concluding that the supreme court had already ruled in *Outfront Media* that CBS was entitled to compensation and, separately, that the City was estopped from denying compensation. The parties then stipulated to the entry of judgment in favor of CBS for $325,000, with the City reserving the right to appeal the court's summary judgment ruling, which it did.

¶3     In resolving that appeal, this court concluded that the supreme court had not ruled in *Outfront Media* that CBS was entitled to compensation. *See R.O.A. Gen. Inc. v. Salt Lake City Corp.*, 2022 UT App 141, ¶¶ 18–25, 525 P.3d 100. We also determined that because CBS had not filed its own summary judgment motion with factual averments supported by material in the record, the district court had erred in concluding as a matter of law—on the record at that time—that the City was estopped from denying compensation. *See id.* ¶¶ 26–34, 38. We then remanded the case for the district court to address in the first instance the City's statutory arguments for why it was not required to pay compensation for the billboard. *See id.* ¶ 39.

¶4     On remand, both sides moved for summary judgment. In its motion, the City again articulated its arguments for why it was not statutorily required to pay compensation, and it contended that it was not estopped from denying compensation. CBS, on the

other hand, argued in its motion that it was entitled to compensation under a plain reading of the relevant statutes and that the City was estopped from asserting its arguments to the contrary. The district court again granted summary judgment in favor of CBS, ruling as a matter of law that under the undisputed facts and relevant statutory scheme, the City was required to compensate CBS for the billboard, and it ordered judgment in favor of CBS for the previously stipulated amount of $325,000. The City again appeals, arguing that in two respects the district court misinterpreted the relevant statutes as requiring the City to pay compensation. We reject one of the City's statutory interpretation arguments, and we conclude that the City is estopped from making the other. Accordingly, we affirm the district court's grant of summary judgment in favor of CBS.

## BACKGROUND[2]

### *Billboard Law Overview*

¶5 By ordinance, the City prohibits the construction within its limits of additional billboards beyond the number already in existence. *See* Salt Lake City Code § 21A.46.160(C). However, it allows for limited relocation of existing billboards through its billboard banking system. *See id.* § 21A.46.160(E)–(T), (CC). Under that system, a billboard owner who demolishes a qualifying billboard may receive "billboard credits" in a "billboard bank account." *Id.* § 21A.46.160(E). The owner may then use those credits to build a new billboard that meets certain design and location criteria, *see id.* § 21A.46.160(F)–(T), or the owner may "sell

---

2. "In reviewing a district court's grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party and recite the facts accordingly." *M.A. v. Regence BlueCross BlueShield of Utah*, 2020 UT App 177, n.1, 479 P.3d 1152 (cleaned up).

or otherwise transfer" the banked credits to another person, *id.* § 21A.46.160(H).

¶6    Several provisions of state code in effect at the times relevant to this case required the City to permit relocation or modification of existing billboards in additional circumstances, even though such relocation or modification was not allowed by the City's ordinances.[3] For example, under the version of Utah Code section 72-7-510.5 then in effect, if the "view and readability" of a billboard became obstructed by highway improvements, the owner could move the billboard "to a point within 500 feet of its prior location," even if the new location did not comply with the location criteria of the City's code. Utah Code § 72-7-510.5 (2014). Alternatively, the owner could "adjust the height" of the billboard at its original location, even if the new height did not comply with the City's design criteria. *Id.* We have previously referred to an application to move or alter a billboard under section 72-7-510.5 as a "Title 72 application," *R.O.A. Gen. Inc. v. Salt Lake City Corp.*, 2022 UT App 141, ¶ 2, 525 P.3d 100, and we will continue to use that nomenclature here.

¶7    Additionally, under the version of Utah Code section 10-9a-511(3)(c) then in effect, a billboard owner could ask the City to waive its ordinances and allow relocation of any billboard from its existing location to a mutually acceptable different location within the City. Utah Code § 10-9a-511(3)(c) (2014). If the City did not agree to grant the request after ninety days and the owner's requested new location was (1) in a commercial, industrial, or manufacturing zone, (2) within one mile of the original location, (3) at least 500 feet from any existing freeway-facing billboard, and (4) at least 300 feet from any existing non-freeway-facing billboard, then the City would be deemed "to have initiated the acquisition of [the billboard] by eminent domain" and would be

---

3. The applicable provisions of state code remain in effect, but they have been revised in material ways. Accordingly, we cite the versions in effect at the time of the events relevant to this case.

required to pay just compensation. *Id.* §§ 10-9a-511(3)(c)(ii), 10-9a-513(2)(a), (2)(d). We have previously referred to an application to relocate a billboard under section 10-9a-511(3)(c) as a "Section 511 request." *R.O.A. Gen.*, 2022 UT App 141, ¶ 4. And again, we will employ the same usage here.

¶8 Construction of a new billboard under any of the foregoing scenarios required a "new billboard construction permit" from the City, which could be obtained by "fil[ing] an application on a form provided by [the City's] zoning administrator." Salt Lake City Code § 21A.46.160(L).

*CBS and Corner Property Apply to Relocate Billboards*

¶9 In 2014, CBS owned a billboard that was within the City, adjacent to the I-15 freeway, and on land it leased from Corner Property, LC. *Outfront Media, LLC v. Salt Lake City Corp.*, 2017 UT 74, ¶ 6, 416 P.3d 389. "In the fall of 2014, CBS's lease from Corner Property was about to expire, so CBS sought a means for relocating its billboard." *Id.* On October 20, 2014, it applied to the City for permission to move its billboard to "an adjacent lot" and to "increase its billboard's height." *Id.* CBS made this request "[p]ursuant to Utah Code [s]ection 72-7-510.5," attaching a copy of that code section to its application. Shortly after submitting its Title 72 application and acting pursuant to a permit, CBS demolished its billboard in order to vacate Corner Property's land.

¶10 At about the same time, Corner Property wanted to relocate a billboard it owned to the property it had been leasing to CBS. On October 31, 2014, it applied to the City for permission to do just that. Although it is unclear from Corner Property's application which statute it relied on in making its relocation request, the City treated Corner Property's application as a Section 511 request.

¶11   "The City could not grant both CBS's and Corner Property's requests to relocate, because state law prohibits freeway-oriented billboards from being located within 500 feet of each other" and the two proposed new locations were "within that spacing restriction." *Outfront Media*, 2017 UT 74, ¶ 8 (citing Utah Code § 72-7-505(3)[4]). Additionally, Corner Property's request "failed to satisfy the spacing requirements" of Utah Code section 10-9a-513(2)(a)(iv) because its billboard's original location and the proposed new location were more than a mile apart, "so the City [was] free to deny [Corner Property's request] without paying just compensation." *Id.*

*The City Denies CBS's Title 72 Application*

¶12   On December 4, 2014, the City sent a letter to CBS denying its Title 72 application. In that letter, the City stated that it understood "that as of the date of [the] letter, the [s]ign ha[d] been demolished." The City then explained that it was denying the application because, in its assessment, the view and readability of CBS's billboard had not become obstructed by new highway improvements. The City also stated its opinion that Utah Code section 72-7-510.5 allowed the owner of an obstructed billboard to "either relocate [a sign] or adjust the [s]ign's height in the current location" but not both. It then further explained that because CBS's billboard had been demolished, "CBS's sole remedy [was] to relocate the [s]ign to the proposed new location . . . since a height increase at the current location [was] no longer possible." The City also stated, however, that because the proposed new location for CBS's billboard "similarly parallel[ed] the freeway," the "claims of obstruction" that CBS had made regarding "the current [s]ign location [would] likely occur in the new location and [would] similarly be disputed by the City." For all of these reasons, the City denied CBS's Title 72 application to relocate and increase the height of its billboard. The letter informed CBS that

---

4. Utah Code section 72-7-505 has not been materially amended since the parties submitted their relocation requests.

because it had made its request under state law, "no City administrative appeal" would be available but that CBS could "seek review of [the City's] decision as provided for by the Utah Rules of Civil Procedure." The City then ended the letter as follows:

> If CBS prefers to modify its application to either (a) bank the billboard credits for the now demolished [s]ign . . . or (b) request to relocate the [s]ign under Utah Code [section] 10-9a-511(3)(c)(i), please submit the appropriate modified request. Please be advised, however, that the City reserves the right to condemn the [s]ign under Utah Code [section] 10-9a-513(2).

¶13 Notwithstanding the City's statement that no administrative appeal would be available for its denial of CBS's Title 72 application, CBS attempted to initiate an administrative appeal. In response, on December 18, 2014, the City sent CBS another letter, again informing it that the City would "not hear CBS's administrative appeal" and that, instead, CBS could "seek review of the City's denial of the request to raise and relocate [its sign] as provided for by the Utah Rules of Civil Procedure." Then the City concluded as follows:

> As stated in [the City's] letter to you dated December 4, 2014, if CBS prefers to modify its application to either bank its billboard credits . . . or request to relocate the sign under Utah Code [section] 10-9a-511(3)(c)(i), the City will consider a modified request. However, the City reserves its rights under Utah Code [section] 10-9a-513(2)(a).

*CBS Seeks District Court Review of the Denial of Its*
*Title 72 Application*

¶14  At this point, rather than bank billboard credits or modify its Title 72 application, CBS sought district court review of the City's denial of the application. As part of the district court proceedings, CBS sought and obtained a temporary restraining order prohibiting the City from issuing a permit "within 500 feet of the real property" where CBS desired to reconstruct its billboard. Subsequently, the district court granted a preliminary injunction to the same effect, which prevented the City from acting on Corner Property's request to relocate its own billboard "until further order of the [c]ourt." Eventually, on cross motions for summary judgment, the district court affirmed the City's denial of CBS's Title 72 application, agreeing with the City that CBS could not both relocate and increase the height of its billboard under section 72-7-510.5 and ordering dismissal of the district court action.

*CBS Modifies Its Application into a Section 511 Request; the City*
*Denies CBS's Section 511 Request and Grants Corner Property's*
*Competing Request*

¶15  Having lost in the district court on review of the City's denial of its Title 72 application, CBS then "accepted [the City's earlier] invitation to modify its relocation request." *Outfront Media, LLC v. Salt Lake City Corp.*, 2017 UT 74, ¶ 7, 416 P.3d 389. CBS's modified request did not rely on Utah Code section 72-7-510.5 but, instead, "conformed to the requirements of Utah Code section 10-9a-511(3)(c)(i)." *Id.*

¶16  The City soon denied CBS's Section 511 request to relocate its billboard to the property adjacent to Corner Property's parcel and, on the same day, granted Corner Property's request to move its billboard to the parcel it had previously rented to CBS. *See id.* ¶¶ 9–10. The City's letter denying CBS's Section 511 request

identified CBS's modified application by the same application number the City had assigned to CBS's original application.

¶17 In its denial letter, the City said that "its reason for denying CBS's [Section 511] request was that the requested [new] location fell within a gateway under the City's zoning ordinances, and the ordinance prohibit[ed] construction of a billboard in a gateway area." *Id.* ¶ 9. "The City acknowledged that it had authority . . . to waive this zoning ordinance, but it informed CBS that it was unwilling to do so because it 'has a longstanding policy in favor of retiring and removing billboards as the opportunity to do so arises.'" *Id.* And in this instance, the City noted, denial of CBS's application and approval of Corner Property's application created a net reduction in the number of billboards in the City. *See id.* ¶ 10.

*CBS Appeals the Denial of Its Section 511 Request to the City's Land Use Hearing Officer*

¶18 CBS sought review of the City's denial of its Section 511 request and approval of Corner Property's Section 511 request "before the City's appeal authority, a land use hearing officer." *Id.* ¶ 11. CBS asserted that the City's denial of its request "was illegal, and was arbitrary and/or capricious." In its written response, the City asserted that it had "statutory discretion to deny applications to relocate billboards as long as it [was] willing to pay the property owner just compensation as it ha[d] consistently represented to CBS it [would] do here." In oral argument before the hearing officer, the City stated, "CBS submitted an application to the City under [section 10-9a-511(3)(c)]. The City exercised its discretion and decided not to waive [its] ordinance in this circumstance, and [it] denied CBS's application and elected to pay just compensation for that decision." Later, in response to written questions from the hearing officer, the City said that if it "exercises its discretion and declines to allow a billboard to relocate, it has to pay just compensation to the billboard owner." Ultimately, the hearing officer upheld the City's denial of CBS's Section 511 request and grant of Corner Property's Section 511 request. *See id.*

*CBS Appeals the Denial of Its Section 511 Request to the District Court and the Supreme Court*

¶19    CBS sought district court review of the hearing officer's decision. "The district court rejected CBS's arguments and concluded that the City's decisions were not arbitrary, capricious, or illegal, and affirmed the decision." *Id.* It therefore "upheld the City's decisions to deny CBS's request and approve Corner Property's." *Id.* CBS then appealed to the Utah Supreme Court, arguing, among other things, "that if a relocation denial would trigger just compensation under" Utah Code section 10-9a-513(2)(a), "then the relocation is mandated by State law, and the City *must* approve the relocation request." *Id.* ¶ 14 (cleaned up); *see id.* ¶¶ 11, 13–15. The supreme court disagreed and on October 23, 2017, issued an opinion affirming the district court's decision. In that opinion, the court explained that Utah Code section 10-9a-513(2)(a) "does not *mandate* relocation of any billboard; it simply specifies circumstances where just compensation must be paid if relocation is denied." *Id.* ¶ 37; *see id.* ¶ 46. The court continued, "The statute gives the municipality the option of permitting the relocation, or denying it and paying just compensation." *Id.* ¶ 37.

*CBS Demands Compensation and the City Rejects the Demand*

¶20    In November 2018, following issuance of the supreme court's decision in *Outfront Media*, CBS wrote a letter demanding that the City begin the process of compensating CBS for its billboard under Utah Code sections 10-9a-511(3)(c) and 10-9a-513(2)(a). The City responded with a letter of its own, notifying CBS that it had "determined [that] the denial of CBS's section 511 application does not fit the narrow circumstance set forth in section 513(2)(a)(iv) and no compensation is owed." The City contended as follows:

> Utah Code § 10-9a-513(2)(a)(iv) only requires payment of just compensation if a municipality "prevents" a billboard owner from "relocating" a

billboard and only where certain billboard spacing and other requirements are met. The term "relocate" is commonly understood to mean moving something from one location to another location. Thus, to even begin to qualify for just compensation under section 513(2)(a)(iv), CBS was required to have a billboard in existence at the time it made its section 511 application. CBS cannot meet this requirement. CBS was evicted from the [Corner Property parcel] by the landowner and demolished its billboard pursuant to that eviction more than nine months before it submitted a section 511 application to the City. Thus, CBS's section 511 application does not meet the plain language requirements of Utah Code § 10-9a-513(2)(a)(iv) and no compensation is owed for the denial of that application.

*CBS Sues the City for Compensation*

¶21 Upon the City's denial of compensation for CBS's billboard, CBS sued the City. The City moved for summary judgment, pressing, among other things, the same argument it had articulated in its letter denying compensation—namely, that "CBS cannot satisfy the requirements of [Utah Code section 10-9a-513(2)(a)(iv)] because CBS did not have a billboard to relocate when it requested relocation" under section 10-9a-511(3)(c) because, by then, it had demolished its billboard. The City also argued that CBS's Section 511 request did "not qualify for compensation under the statute for the additional reason that the application requests relocation within 500 feet of the site of another potential billboard"—namely, the one Corner Property had sought to relocate to its parcel. CBS opposed the motion, arguing that "the City [had] made its decision years ago to pay just compensation rather than grant [CBS's] relocation

application." Thus, CBS argued, judicial estoppel and equitable estoppel "[p]reclude[d] the City's [n]ew [a]rguments."

¶22    The district court denied the City's motion for summary judgment, reasoning that the supreme court had already ruled—in CBS's prior appeal, *Outfront Media*—that "while the City was allowed to deny [CBS's] relocation application, such denial required compensation." The district court further reasoned that none of the arguments made by the City in its summary judgment motion were "ever provided as [a] basis for denying CBS's relocation application" and, accordingly, that "the City [was] estoppe[d] from relying on new reasons to reject CBS's relocation application in an effort to avoid paying just compensation."

¶23    After the district court issued its decision, the parties stipulated that the value of the demolished billboard was $325,000. They then jointly moved for the entry of judgment in favor of CBS "in the amount of $325,000 as just compensation for the City's denial of" CBS's Section 511 request to relocate the billboard, with the City reserving the right to appeal the court's ruling requiring the City to pay just compensation. The court entered a judgment of $325,000 in favor of CBS.

*The City Appeals*

¶24    The City then appealed that judgment to this court. We reversed, concluding "that the district court [had] incorrectly interpreted *Outfront Media* as [having] decid[ed] that CBS was entitled to compensation under the specific circumstances of this case." *R.O.A. Gen. Inc. v. Salt Lake City Corp.*, 2022 UT App 141, ¶ 25, 525 P.3d 100. We further concluded that on the record before us then, CBS had failed (in its memorandum opposing the City's summary judgment motion) to establish as a matter of law that either equitable estoppel or judicial estoppel applied to bar the City's denial of compensation. *Id.* ¶¶ 31–34. Finally, we declined to reach the City's two statutory arguments—namely, that CBS is not entitled to compensation under Utah Code section 10-9a-

513(2)(a)(iv), "first, because two companies requested a permit for the same location and, second, because CBS did not have an existing billboard to relocate when it submitted the Section 511 request." *Id.* ¶ 39 (cleaned up). While the City had made these arguments in its summary judgment motion, the district court did not address them because it concluded that the decision in *Outfront Media* already required the City to pay compensation. *See id.* ¶ 25. "Mindful that we are a court of review, not of first view, and because we [believed there] would [be] value [in receiving] the district court's analysis, we remand[ed] for the district court to consider the merits of the City's statutory arguments" in the first instance. *Id.* ¶ 39 (cleaned up).

*CBS Prevails on Remand*

¶25    On remand, both parties moved for summary judgment. In its motion, the City again argued that under Utah's "statutory relocation and compensation scheme," CBS "does not qualify for compensation" because (1) "it requested to relocate a billboard to essentially the same location as another billboard" and (2) "it demolished its billboard ten months before it submitted a section 511 request to relocate the billboard."

¶26    In its motion, CBS disputed the City's statutory arguments and also contended that, in any event, the City was estopped from making those arguments. In support of its estoppel theory, CBS noted (among other things) that "despite the demolition of [CBS's billboard]," the City had repeatedly informed CBS that it could "modify its application to either (a) bank the billboard credits for the now demolished [s]ign . . . or (b) request to relocate the sign under Utah Code [section] 10-9a-511(3)(c)(i)." CBS also submitted a declaration from its vice president averring that it had "relied on the City's repeated assurances" by choosing not to timely "bank and use its billboard credits" and, instead, to appeal the denial of its Title 72 application and then file a Section 511 request.

¶27    The district court denied the City's summary judgment motion and granted CBS's. It determined as a matter of law under the undisputed facts that CBS had met all the requirements for compensation under Utah Code sections 10-9a-511(3)(c) and 10-9a-513(2)(a)(iv). It explained that because "the Corner Property sign was not 'existing' [on the Corner Property parcel] at the time [CBS] filed its relocation request," there was "no factual support for the argument that another billboard existed" too close to the location onto which CBS wanted to relocate its billboard. And the district court saw "nothing absurd about interpreting the statutes at issue here according to their plain meaning" on this point. Regarding the City's argument that CBS did not qualify for compensation because it had demolished its billboard before it submitted its Section 511 request, the court concluded that this argument was "belie[d] by the facts." The court then noted that the City's December 4, 2014 letter denying CBS's initial "request to relocate and increase the height of the [b]illboard . . . [had] acknowledged that the [b]illboard had been demolished" and nevertheless "invit[ed] [CBS] to 'modify its application to . . . request to relocate the sign under Utah Code [section] 10-9a-511(3)(c)(i)'" and, "[p]er the City's own records, [CBS's] application was always maintained by the City [under] the same permit request number[]." Finally, the court ruled that, in any event, "nothing in [Utah Code section 10-9a-513(2)(a)(iv)] require[d] that a billboard remain in place during the entirety of the process whereby an applicant seeks approval of relocation." The court then entered a judgment requiring the City to compensate CBS $325,000 for its billboard. The City again appeals.

## ISSUE AND STANDARD OF REVIEW

¶28    The City challenges the district court's grant of summary judgment, contending that the court erred in determining as a matter of law that "Utah Code sections 10-9a-511 and 513 require[d] the City to pay just compensation." "An appellate court reviews a trial court's legal conclusions and ultimate grant or

denial of summary judgment for correctness and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (cleaned up). Likewise, "the proper interpretation and application of a statute is a question of law reviewed for correctness." *State v. Robertson*, 2017 UT 27, ¶ 14, 438 P.3d 491 (cleaned up).

## ANALYSIS

¶29 The City asserts that the district court erred in two respects in interpreting Utah Code sections 10-9a-511(3)(c) and 10-9a-513(2)(a)(iv).[5] The City's first contention is that interpreting these

---

5. The version of section 10-9a-511(3)(c) in effect when CBS submitted its Section 511 request provided as follows:

> (i) Notwithstanding a prohibition in its zoning ordinance, a municipality may permit a billboard owner to relocate the billboard within the municipality's boundaries to a location that is mutually acceptable to the municipality and the billboard owner.

> (ii) If the municipality and billboard owner cannot agree to a mutually acceptable location within 90 days after the owner submits a written request to relocate the billboard, the provisions of Subsection 10-9a-513(2)(a)(iv) apply.

Utah Code § 10-9a-511(3)(c) (2014). And the version of section 10-9a-513(2)(a)(iv) then in effect read as follows:

> A municipality is considered to have initiated the acquisition of a billboard structure by eminent
>
> (continued…)

provisions to "require a municipality to pay compensation to unsuccessful applicants when it receives multiple applications for a single permit" yields a "patently absurd" result. Its second contention is that these provisions "limit[] payment of compensation to billboard owners [who] have existing billboards capable of being relocated" and that because CBS "submitted its Section 511 request . . . *after* it demolished its billboard," it did not

---

domain if the municipality prevent[ed] a billboard owner from . . . relocating a billboard into any commercial, industrial, or manufacturing zone within the municipality's boundaries, if:

(A) the relocated billboard is:

(I) within 5,280 feet of its previous location; and

(II) no closer than:

(Aa) 300 feet from an off-premise sign existing on the same side of the street or highway; or

(Bb) if the street or highway is an interstate . . . highway . . . , [500 feet from] an off-premise sign existing on the same side of the interstate . . . highway; and

(B) (I) the billboard owner has submitted a written request under Subsection 10-9a-511(3)(c); and

(II) the municipality and billboard owner are unable to agree, within the time provided in Subsection 10-9a-511(3)(c), to a mutually acceptable location . . . .

*Id*. § 10-9a-513(2)(a)(iv) (2014).

meet "the threshold requirement of having an existing billboard." We address each of these contentions in turn.

## I. Multiple Applicants for a Single Permit

¶30 The City's first contention is that it is not statutorily required to compensate an unsuccessful applicant when it receives multiple Section 511 requests to relocate a billboard to essentially the same location. Under the version of Utah Code section 10-9a-513(2)(a)(iv) then in effect, the City was not required to compensate a billboard owner for denying a request to relocate if the proposed new location was within 500 feet from "an off-premise sign existing on the same side of [an] interstate . . . highway." Utah Code § 10-9a-513(2)(a)(iv)(A)(II)(Bb) (2014). It is undisputed that when CBS submitted its Section 511 request to relocate its sign, no sign existed on the same side of I-15 within 500 feet of the proposed new location. The City acknowledges that "the plain language" of section 10-9a-513(2)(a)(iv) "make[s] clear [that] a municipality is not required to pay compensation if it denies a request to relocate a billboard to a freeway-facing location that is within 500 feet of an existing billboard." But it asserts that "[t]o avoid otherwise absurd results, the same conclusion must be reached where a municipality is in receipt of multiple applications for the same location or locations that are within 500 feet of each other."

¶31 "Our caselaw recognizes two different interpretive tools concerning absurdity." *Bagley v. Bagley*, 2016 UT 48, ¶ 27, 387 P.3d 1000 (cleaned up). "The first—the absurd consequences canon—merely resolves an ambiguity [in a statute] by choosing the reading that avoids absurd results." *Id.* (cleaned up). "The second—the absurdity doctrine—reforms unambiguous statutory language where the language would lead to an absurd result." *Id.* (cleaned up). The City asserts that the version of section 10-9a-513(2)(a)(iv) then in effect was ambiguous, and it asks us to apply the absurd consequences canon to resolve the purported ambiguity. The City further contends that if we determine the

statute to be unambiguous, we should apply the absurdity doctrine and reform the plain meaning of the statute. We are not persuaded by either argument.

¶32 As noted, for the absurd consequences canon to apply, the statute at issue must be ambiguous. *See id.* "A statute is considered ambiguous if its terms remain susceptible to two or more reasonable interpretations after we have conducted a plain language analysis." *State v. Wilkerson*, 2020 UT App 160, ¶ 11, 478 P.3d 1048 (cleaned up). The relevant portion of section 10-9a-513(2)(a)(iv) stated that a municipality need not pay compensation when it denied a Section 511 request if the proposed new location for the billboard was within 500 feet of "an off-premise sign *existing* on the same side of the interstate." Utah Code § 10-9a-513(2)(a)(iv)(A)(II)(Bb) (2014) (emphasis added). The City acknowledges that one reasonable interpretation of this provision is that the word "existing" modifies "sign" and that under that interpretation, a sign must already "exist" too close to the proposed new location for the City to be able to deny the request and not pay compensation. The City contends, however, that there is another reasonable interpretation of this provision—specifically, that "existing" instead modifies "on the same side of the interstate." Under this interpretation, the City asserts, there need not be an "existing billboard" for the City to be able to deny a Section 511 request and not pay compensation. Instead, there need only be a competing application that proposes a relocation site "existing on the same side of the interstate" and within 500 feet of the proposed site in the denied request. This alternative interpretation, however, is not reasonable.

¶33 "As [our supreme] court has previously stated, an application of elementary rules of punctuation and grammar is useful in the legal interpretation of a text." *Prisbrey v. Bloomington Water Co.*, 2003 UT 56, ¶ 17, 82 P.3d 1119 (cleaned up). In the phrase "an off-premise sign existing on the same side of the interstate," the word "existing" is a present participle that functions as an adjective. *See Participle*, Merriam-Webster,

https://www.merriam-webster.com/dictionary/participle [https://perma.cc/WG8H-RCFE] (defining "participle" as a "verbal form that has the function of an adjective and at the same time shows such verbal features as tense"). Moreover, "existing" and the prepositional phrase that follows it—namely, "on the same side of the interstate"—combine to form a participial phrase that, in its entirety, modifies the noun "sign." *See* Matt Ellis, *Participial Phrases: How They Work, With Examples*, Grammarly (Nov. 13, 2023), https://www.grammarly.com/blog/grammar/participial-phrases/ [https://perma.cc/YX7Y-ZMND] ("A participial phrase is a type of modifier that uses the participle form of a verb to describe a noun. . . . Participial phrases also include other words besides the participle—such as prepositional phrases . . . ."). Thus, this provision plainly means that a municipality may deny a Section 511 request and not compensate the applicant if a sign in too-close proximity is already "existing on the same side of the interstate." Any other interpretation lacks grammatical support. *See Nielsen v. Retirement Board*, 2019 UT App 89, ¶ 16, 443 P.3d 1264 (rejecting an asserted statutory "interpretation because it [was] contrary to proper grammar and usage"). And because this provision has only one plain meaning, it is not ambiguous and we have no occasion to apply the absurd consequences canon. *See Bagley*, 2016 UT 48, ¶ 27.

¶34     In the alternative, the City asks us to apply the absurdity doctrine, which, as already noted, "reforms unambiguous statutory language where the language would lead to an absurd result." *Id.* (cleaned up). The City requests that we reform the statute to expand the concept of an "existing billboard" to include a "proposed billboard." If reformed in this way, the statute would have allowed the City to deny a Section 511 request without paying compensation if a competing request proposed to relocate another billboard to the same side of the freeway and within 500 feet of the other requested relocation site.

¶35     Our supreme court "has developed a narrow, exacting standard for determining whether to apply the absurdity doctrine

and read a statute contrary to its plain meaning." *Id.* ¶ 28. Under this standard, we may "not apply the absurdity doctrine unless the operation of the plain language is so overwhelmingly absurd that no rational legislator could have intended the statute to operate in such a manner." *Id.* (cleaned up). "This standard is satisfied only if the legislature could not reasonably have intended the result." *Id.*

¶36 The City observes that here, "[w]hen proposing this billboard relocation and compensation scheme, the sponsoring legislator explained [that the purpose of the scheme] was to protect the property rights of a billboard owner that was required to move [its billboard] because of development or an expiring lease [but] was barred [from doing so] *by municipal ordinance*." (Emphasis added.) The City then argues that "to read 'existing billboards' to exclude 'proposed billboards' would blatantly controvert the express purpose of the statute" because the express purpose of the statute was "to require compensation where a billboard is prevented from relocating under a provision *of municipal ordinance*, not when relocation is impermissible under a provision of *state code*." But the fact that a statute's plain terms accomplish more than the general purpose identified by a sole legislator summarizing the enacting legislation does not mean that the plain language yields an absurd result. More is required to trigger the absurdity doctrine.

¶37 The City also asserts that in situations like the one here—where it received competing Section 511 requests "for essentially the same location" and "State law prohibited it from granting both"—rational legislators would not make a municipality "liable for the statutory consequence of denying" one of the competing requests. We are not persuaded. The City itself "has a longstanding policy in favor of retiring and removing billboards as the opportunity to do so arises." In the same vein, rational legislators might want to incentivize the removal of billboards by providing a mechanism whereby billboard owners who are willing to remove their billboards can readily receive public

payment for doing so. One such mechanism is precisely the one set forth under the plain terms of this statute. Moreover, the same rational legislators might very well choose to require the municipality that directly benefits from the billboards' removal to make the incentive payment. Thus, because the legislature could have reasonably intended the result of the plain statutory language at issue here, we decline to apply the absurdity doctrine.

¶38    For the foregoing reasons, the district court did not err in concluding that Corner Property's competing Section 511 request did not preclude CBS's right to compensation when the City denied its Section 511 request.

## II. Relocation of a Demolished Billboard

¶39    The City next contends that the billboard relocation statute limits payment of compensation for rejected Section 511 requests "to billboard owners [who] have existing billboards capable of being relocated" and that because CBS "submitted its Section 511 request . . . *after* it demolished its billboard," it did not meet "the threshold requirement of having an existing billboard." We do not address this statutory argument. Instead, we conclude that equitable estoppel bars the City from relying on this argument to deny compensation to CBS.

¶40    Equitable estoppel has three elements:

> first, a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted; next, reasonable action or inaction by the other party taken or not taken on the basis of the first party's statement, admission, act[,] or failure to act; and, third, injury to the second party that would result from allowing the first party to contradict or repudiate such statement, admission, act, or failure to act.

*R.O.A. Gen. Inc. v. Salt Lake City Corp.*, 2022 UT App 141, ¶ 28, 525 P.3d 100 (cleaned up). This doctrine "is usually reserved for extreme cases." *Id.* (cleaned up). Moreover, our supreme court has explained that "the usual rules of estoppel do not apply against the government . . . and courts must be cautious in applying equitable estoppel against the State."[6] *Monarrez v. Utah Dep't of Transp.*, 2016 UT 10, ¶ 35, 368 P.3d 846 (cleaned up). "Accordingly, estoppel is applied against the [S]tate only if necessary to prevent manifest injustice, and the exercise of governmental powers will not be impaired as a result." *Id.* (cleaned up). Notwithstanding these limitations, we determine that equitable estoppel applies under the undisputed facts of this case. Before articulating our equitable estoppel analysis, however, we address the propriety of our reliance on that doctrine generally.

¶41 We addressed CBS's equitable estoppel argument in the prior appeal in this case. *See R.O.A. Gen.*, 2022 UT App 141, ¶¶ 28, 30–33. There we observed that on the record before us then, CBS's factual assertions related to equitable estoppel were "just allegations" and not supported by "record citations to affidavits or other evidence that might establish that CBS, in fact," relied to its detriment on the City's representations. *Id.* ¶¶ 31–33. Thus, we held that the district court "erred in determining that estoppel prevented the City from raising its statutory arguments in its motion for summary judgment." *Id.* ¶ 38. On that basis, we "vacate[d] the court's judgment and order denying the City's summary judgment motion, and we remand[ed] for further

---

6. Because the City derives its authority from the State, this principle applies to municipalities. *See generally State v. Hutchinson*, 624 P.2d 1116, 1121 (Utah 1980) ("Local governments, as subdivisions of the State, exercise those powers granted to them by the State Legislature . . . ."); *Wadsworth v. Santaquin City*, 28 P.2d 161, 167 (Utah 1933) ("[T]he power or authority which a municipality possesses in this state is derived from the Legislature.").

proceedings." *Id.* ¶ 40. The City now argues that it was "error for the district court, on remand, to contradict the direct mandate of this Court and consider [CBS's] re-argument of this already decided issue." The City further asserts that we "should not revisit this decided issue" either, to prevent CBS from having "a 'second bite at the evidentiary apple.'" (Quoting *Keiter v. Keiter*, 2010 UT App 169, ¶ 28, 235 P.3d 782.)

¶42 However, the district court did not contradict our mandate, which expressly allowed for additional proceedings on remand and did not preclude new motions for summary judgment. We therefore see no error by the district court in considering on remand CBS's summary judgment motion. *See State v. Blake*, 2025 UT 21, ¶ 29 ("A reversal of a trial court order invalidates that order but does not prohibit further proceedings *unless* the reversing court expressly states otherwise.").

¶43 As for the City's second-bite-at-the-evidentiary-apple argument, unlike the case the City cites for support, this is not an appeal following trial. *See Keiter*, 2010 UT App 169, ¶ 1 (noting that the appeal challenged "the adequacy of the factual findings and the sufficiency of the evidence"). Prior to trial, a second-bite-at-the-evidentiary-apple argument implicates the discovery rules. *See generally* Utah R. Civ. P. 26 (providing timing and other requirements for the disclosure of evidence). And the City has not demonstrated that under those rules the evidence CBS submitted on remand in support of its summary judgment motion is not properly part of the record. *See infra* note 7. We therefore proceed to address CBS's equitable estoppel argument on the record now before us.

A.    Statement by One Party that Is Inconsistent with a Claim Later Asserted

¶44 Equitable estoppel first requires "a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted." *R.O.A. General*, 2022 UT App 141, ¶ 28 (cleaned up).

And our supreme court observed in *Monarrez v. Utah Department of Transportation*, 2016 UT 10, 368 P.3d 846, that "the few cases in which Utah courts have permitted estoppel against the government have involved *very specific* written representations." *Id.* ¶ 36 (cleaned up). For example, the *Monarrez* court noted that in *Celebrity Club, Inc. v. Utah Liquor Control Commission*, 602 P.2d 689 (Utah 1979), the Liquor Control Commission was estopped "from denying a liquor license on the ground that the applicant had failed to comply with a specific siting requirement" because "the applicant had previously sought guidance from the Commission on how to comply with the siting requirement and the Commission, after reviewing surveys of the proposed site, had sent a letter to the applicant stating that the applicant had satisfied the requirement." 2016 UT 10, ¶ 36 (cleaned up). The *Monarrez* court also cited *Eldredge v. Utah State Retirement Board*, 795 P.2d 671 (Utah Ct. App. 1990), where this court "estopped the Utah State Retirement Board from denying over six years of service credit to a former employee," because "the employee, prior to retiring, had sought guidance from the Utah State Retirement Office as to whether certain service credits would be counted toward his retirement benefits" and, in response, the office "sent the employee a letter stating that the service credits would be posted to his account and that he would not need to purchase them." 2016 UT 10, ¶ 36 (cleaned up). The *Monarrez* court concluded that "in both cases, estoppel was warranted because there were very clear, well-substantiated representations by government entities that were directly contradicted by those entities' subsequent actions." *Id.* (cleaned up).

¶45 A contrasting example is *Monarrez* itself. There, a motorist was injured when he was "forced to stop suddenly near a construction crew on a Utah road." *Id.* ¶ 1. He filed a notice of claim against the Utah Department of Transportation (UDOT) pursuant to the governmental immunity act. *Id.* After the date his claim was deemed denied based on the lack of a response from UDOT, UDOT sent him a letter explaining that it had "completed

an investigation of [the] claim and had concluded that [it was] not liable for [the alleged] damages." *Id.* ¶ 3 (cleaned up). Accordingly, the letter stated, "[W]e respectfully deny your claim." *Id.* It "also contained a clause stating that the letter [did] 'not constitute a waiver of any of the provisions or requirements of the Governmental Immunity Act.'" *Id.*

¶46   The motorist filed a lawsuit against UDOT more than one year after the date his notice of claim was deemed denied but less than one year from the date of UDOT's denial letter. *Id.* ¶ 4. UDOT successfully defended by asserting that the motorist's claim was barred by the applicable statute of limitations, which required a claimant to bring an action "within one year after denial of the claim or within one year after the denial period has expired." *Id.* (cleaned up). On appeal, the motorist argued that UDOT's letter denying his claim was "an act inconsistent with UDOT's later assertion of the limitations defense" and that UDOT should be estopped from arguing that the limitation period started to run any earlier than the date of its denial letter. *Id.* ¶ 35. The supreme court concluded, however, that UDOT was not estopped from asserting the statute of limitations because its written statement to the motorist—namely, "we respectfully deny your claim"—was "neither a very specific nor a very clear . . . representation that UDOT would not later assert the statute of limitations defense." *Id.* ¶ 38 (cleaned up).

¶47   Here, the City did not simply "respectfully deny" CBS's request as UDOT did the motorist's claim in *Monarrez*. Rather, in its December 4, 2014 letter, the City acknowledged that "as of the date of [that] letter, [CBS's] [s]ign ha[d] been demolished," yet it told CBS in writing that it could "modify its application to either (a) bank the billboard credits for the now demolished [s]ign . . . or (b) request to relocate the [s]ign under Utah Code [section] 10-9a-511(3)(c)(i)." Then in its December 18, 2014 letter, the City referenced the earlier letter and again wrote that if CBS "prefer[red] to modify its application to either bank its billboard credits . . . or request to relocate the sign under Utah Code

[section] 10-9a-511(3)(c)(i), the City [would] consider a modified request." Like the Liquor Control Commission's statement that the applicant in that case had satisfied the applicable siting requirement and the Retirement Board's representation that the employee there would not need to purchase certain service credits, the City's December 2014 letters contained a very specific written representation—namely, that notwithstanding the earlier demolition of CBS's billboard, the City would accept a Section 511 request to relocate that billboard.

¶48    Admittedly, the City's December 18 letter said that it was "reserv[ing] its rights under Utah Code [section] 10-9a-513(2)(a)," and a right that the City now claims it had under section 10-9a-513(2)(a) is a right to not pay compensation if the billboard in question has already been demolished. But we do not read the December 18 letter as reserving a right to deny compensation based on the billboard's demolition. The City expressly acknowledged in both December 2014 letters that the billboard had been demolished before it invited CBS to modify its application into a Section 511 request. That invitation would have been meaningless if the December 18 letter is read as reserving a right to deny—on the basis that the billboard had been demolished—the very Section 511 request it was nonetheless inviting. And we do not believe the City intended to extend a meaningless invitation or that CBS should have understood it as such.

¶49    We also recognize that the December 2014 letters each first informed CBS of its appeal right and then said that "[i]f CBS prefer[red] to modify its application," it could. To the extent that this phrasing might be read as presenting an option for CBS to either appeal the denial of its Title 72 application or modify its request but not do both, such a reading is foreclosed by the City's subsequent communications. Specifically, when CBS modified its application into a Section 511 request, the City did not deny the Section 511 request on the basis that CBS had demolished its billboard. Instead, it denied the Section 511 request on the basis

that CBS wanted to relocate its billboard into a gateway area. The City assigned CBS's Section 511 request the same application number it had given to CBS's Title 72 application, apparently treating the Section 511 request as relating back to when the Title 72 application was filed. Moreover, during CBS's administrative appeal of the denial of its Section 511 request, the City told the hearing officer that it had "consistently represented to CBS" that it would compensate CBS for its billboard; that although it had denied CBS's application, it had "elected to pay just compensation for that decision"; and that when it "declines to allow a billboard to relocate, it has to pay just compensation to the billboard owner." These statements at that stage of the proceedings are squarely at odds with the notion that the City's invitation for CBS to modify its application was conditioned on CBS forgoing an appeal of the denial of its Title 72 application. We therefore do not read the December 2014 letters as presenting to CBS such an either-or condition.

¶50   In sum, we conclude that the City's December 2014 letters—particularly as reinforced by the City's later statements over the next two years—contain specific, written statements that it would accept a Section 511 request to relocate CBS's billboard despite the billboard's prior demolition. And these statements are inconsistent with the City's current claim that it could lawfully deny compensation based on CBS having demolished the billboard prior to submitting its Section 511 request.

B.   Reasonable Action or Inaction

¶51   To establish equitable estoppel, CBS "must next demonstrate that [it] acted prudently and reasonably relied on" the City's representations. *Youngblood v. Auto-Owners Ins. Co.*, 2007 UT 28, ¶ 32, 158 P.3d 1088. "When a party knows or should have known reliance would be in error, the party cannot reasonably rely on the [representation] as a matter of law." *Id.* This is not a subjective test, but rather the question is "what would a

reasonable person conclude under these circumstances." *Id.* ¶ 34 (cleaned up).

¶52    On remand from the City's prior appeal, CBS submitted a declaration from its vice president in support of its motion for summary judgment stating that CBS "relied on the City's repeated assurances that it would receive compensation" if it modified its application and filed a Section 511 request. The vice president declared that if the City had "informed [CBS] that its relocation application did not qualify for compensation pursuant to Utah Code [section] 10-9a-513," then CBS "could have asked the City to bank and use its billboard credits as allowed by City ordinances" rather than pursue appeals that extended beyond the time allowed for using billboard credits following demolition of a qualifying sign. *See generally* Salt Lake City Code § 21A.46.160(E), (G) (stating that "[a]fter a nonconforming billboard is demolished pursuant to a permit . . . , the city shall create a billboard bank account for the billboard owner" that "show[s] the date of the removal," and that generally "[a]ny billboard credits not used within thirty six (36) months of their creation shall expire and be of no further value"). Although the City "[d]isputed" these facts in its opposition to CBS's motion for summary judgment, it did so only by characterizing them as "argument" and "irrelevant." The City did not respond with any citations to material in the record as required by the Utah Rules of Civil Procedure.[7] *See* Utah R. Civ.

---

7. The City asserted in a footnote that the declaration of CBS's vice president was "improper and should be stricken." But a party may not move to strike evidence as part of an opposition memorandum. Utah R. Civ. P. 7(n) ("A party who objects to evidence in another party's motion or memorandum may not move to strike that evidence."). Rather, a "party may object that the material cited to support or dispute a fact [relied on in a summary judgment motion] cannot be presented in a form that would be admissible in evidence." *Id*. R. 56(c)(2). Thus, the City's

(continued…)

P. 56(a)(2) ("[A] memorandum opposing [a] motion [for summary judgment] must include a verbatim restatement of each of the moving party's facts that is disputed with an explanation of the grounds for the dispute supported by citing to materials in the record . . . ."). Thus, these facts, which demonstrate CBS's reliance on the City's invitation, are deemed admitted. *See id.* R. 56(a)(4).

¶53 Additionally, for the reasons outlined above as to why the City's December 2014 letters contained unqualified invitations for CBS to modify its Title 72 application into a Section 511 request despite the prior demolition of its billboard, *see supra* ¶¶ 47–49, we conclude that CBS's reliance on that invitation was reasonable. Stated simply, it was objectively reasonable for CBS to proceed down a path the City expressly invited it to take. *See Celebrity Club, Inc. v. Utah Liquor Control Comm'n*, 602 P.2d 689, 691, 694–95 (Utah 1979); *Eldredge v. Utah State Ret. Board*, 795 P.2d 671, 672–73, 678 (Utah Ct. App. 1990).

---

attempt to strike the declaration was improper. *See Deeter v. Deeter (In re Estate of Deeter)*, 2020 UT App 65, ¶ 22, 464 P.3d 1164 (Mortensen, J., concurring) (stating that "the current rule, wisely, bans [the] practice" of "includ[ing] motions to strike in the context of summary judgment when a party allegedly relied upon inadmissible evidence"). Additionally, the City's appellate challenge to CBS's use of its vice president's declaration is inadequately briefed because it consists of a single sentence, unaccompanied by citation to authority, asserting simply that the declaration was untimely. *See Seamons v. Brandley*, 2011 UT App 434, ¶ 6, 268 P.3d 195 (explaining that an issue is inadequately briefed if it "fails to contain the requisite legal analysis based upon relevant authority"). For these reasons, we deem the declaration to be properly part of the record.

C.     Injury that Would Result from Allowing a Party to Contradict or Repudiate a Statement

¶54    Finally, to establish equitable estoppel, CBS must show that injury will result from allowing the City to contradict or repudiate its invitation for CBS to modify its application into a Section 511 request despite the prior demolition of its billboard. *See R.O.A. Gen. Inc. v. Salt Lake City Corp.*, 2022 UT App 141, ¶ 28, 525 P.3d 100. CBS has made that showing. By reasonably relying on the City's invitation, CBS lost the opportunity to use billboard credits as compensation for the loss of its billboard. We therefore determine that CBS has demonstrated injury.

¶55    Because CBS has satisfied each of the elements of equitable estoppel, we conclude that the City is estopped from denying compensation to CBS on the basis that it demolished its billboard prior to modifying its Title 72 application into a Section 511 request.

CONCLUSION

¶56    The district court did not err in concluding that a municipality may be required to pay compensation to an unsuccessful applicant when it receives multiple Section 511 requests for essentially the same location. And on the record before us, the City is barred by equitable estoppel from denying compensation to CBS on the basis that it demolished its billboard prior to submitting its Section 511 request. Accordingly, we affirm the district court's grant of summary judgment in favor of CBS.

_____